UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATS PRODUCTS, INC,<br><br>Plaintiff,<br><br>v.<br><br>CHAMPION FIBERGLASS, INC.,<br><br>Defendant. | Case No. 13-cv-02403-SI   (DMR)<br><br>**ORDER OR MARCH 30, 2015 JOINT DISCOVERY LETTER**<br><br>Re: Dkt. No. 100 |

Plaintiff ATS Products, Inc. and Defendant Champion Fiberglass, Inc. filed a joint discovery letter concerning Champion's intent to depose Plaintiff's attorney, Marc Shea. The court held a hearing on the letter on May 28, 2015.

## I.   BACKGROUND

### A.   Description of the Parties and the Prior Litigation

ATS owns trade secrets regarding the ingredients needed to create particular phenolic-resorcinol-formaldehyde resins (the "ATS Resins"). Third Am. Compl. ["TAC," Docket No. 71] at ¶ 5. Plaintiff uses the ATS Resins to create fire-resistant plastics. *Id*.

ATS's predecessor-in-interest was Shea Technology ("Shea Tech").[1] TAC at ¶ 6. During the 2000s, Shea Tech licensed its technology to Champion. TAC at ¶ 6; First Am. Compl ["FAC," Docket No. 1] at ¶ 9(a). Shea Tech worked with Champion in the development of Champion's "Flame Shield" product, which was a plastic pipe containing ATS Resins. TAC at ¶ 31; FAC at ¶ 9(a). During that development, Champion worked with Frank Ghiorso, who was an employee of Shea Tech. FAC at ¶ 9(b).

---

[1] The court refers to ATS's attorney as "Marc Shea" in this order to avoid confusion with Shea Tech.

In 2007, Ghiroso left Shea Tech, formed Thermalguard Technology, LLC and Thermalguard LLC (collectively "Thermalguard"), and began marketing and selling resins that had the same properties as the ATS Resins. TAC at ¶ 6.

In 2010, ATS learned that Ghiorso had entered into a contract in 2007 with Champion, which was a Shea Tech licensee, to provide resins for the purpose of creating fire-safe plastics. *Id.* On October 28, 2010, ATS filed an action in this district alleging that Ghiorso and Thermalguard had misappropriated ATS's trade secrets. *See ATS Products Inc. v. Frank Ghiorso et al.*, No. 10-cv-4880-BZ (N.D. Cal. Oct., filed 28, 2010) (the "*Ghiorso* case"). Marc Shea, who represents ATS in this action, also represented ATS in the *Ghiorso* case.

According to ATS, Champion played a role in the *Ghiorso* case even though it was not named or joined as a party. Beginning in November 2010, Champion financed the *Ghiorso* defense "by making payments to Ghiorso of $10,000 per month and by making loans or contributions to payment of fees and costs," eventually contributing a total of $649,000 for the defense. TAC at ¶ 9. ATS contends that Champion provided that financing to the *Ghiorso* defendants because (1) Champion was allegedly buying, and wanted to continue to buy, resins from Thermalguard in order to continue to create the Flame Shield product; and (2) Champion's president Goran Haag was a principal in Thermalguard LLC, one of the *Ghiorso* defendants. TAC at ¶ 9.

On September 26, 2011, attorneys for Champion and Haag filed *pro hac vice* applications to appear in *Ghiorso* as "non-parties," which the court granted. *See Ghiorso*, Docket Nos. 169-70, 171-72. On September 29, 2011, Champion and Haag's counsel participated in a magistrate judge settlement conference held in *Ghiorso*. *See id.*, Docket No. 174. ATS alleges that sometime in September 2011, "Champion announced that it would not consent to the Settlement unless (a) ATS licensed Champion to use Thermalguard Resins and (B) ATS gave Champion a general release." TAC at ¶ 13. "Although neither of those provisions had been discussed previously, ATS engaged in further settlement discussions with Champion." *Id.* On October 10, 2011, "Champion's attorneys notified Plaintiff that Champion had rejected ATS' offer of settlement." TAC at ¶ 15.

ATS alleges that Champion continued to monitor, finance, and assist the *Ghiorso* defense. TAC at ¶ 17. The case was tried in part to the court, and in part to a jury, which returned a special verdict. *Ghiorso*, Docket No. 247; TAC at ¶ 20. Subsequently, the court entered a judgment (1) establishing ATS as the owner of the trade secrets about the ingredients of the ATS Resins; (2) determining that Thermalguard's resins are substantially identical to ATS Resins; and (3) determining that ATS is the owner of the trade secret information used to create Thermalguard's resins. TAC at ¶¶ 20-21(A-C); *Ghiorso*, Docket Nos. 271, 273. The judgment enjoined the *Ghiorso* defendants "and anyone in active concert or in participation with any of them" from using or buying Thermalguard resins that were derived from ATS's trade secrets. TAC at ¶ 21(D); *Ghiorso*, Docket No. 271 at ¶¶ 56-57.

ATS gave written notice of the judgment in *Ghiorso* to Champion. TAC at ¶ 22.

**B.     The Instant Litigation**

In the case now before the court, ATS alleges that "Champion's interests were identical to the interests of the *Ghiorso* defendants in the *Ghiorso* case."[2] TAC at ¶ 17. ATS also alleges the *Ghiorso* defendants acted as agents for Champion, and that as a result of Champion's actions, there was a privity of interest in the *Ghiorso* case between the *Ghiorso* defendants and Champion. TAC at ¶ 19.

On this basis, ATS sues Champion for declaratory relief that under the doctrine of collateral estoppel, Champion is estopped from re-litigating in this case issues previously tried in the *Ghiorso* case, including ATS' ownership of the relevant trade secrets and ATS' rights to enjoin others from buying, using or exploiting Thermalguard resins or selling the Flame Shield product, which is believed to use Thermalguard resins.[3] TAC at ¶ 44(A). ATS also brings a cause

---

[2] ATS contends that the *Ghiorso* defendants and Champion shared the same objectives: "to defeat ATS' claims of ownership of trade secrets, to defeat ATS' claim that the *Ghiorso* defendants had misappropriated ATS' trade secrets, and to defeat ATS' requests for damages and injunctive relief arising from the *Ghiorso* defendants' trade secret misappropriations." TAC at ¶ 17.

[3] The TAC alleges that from 2010 to 2014, Champion marketed and sold its Flame Shield product to customers such as the Bay Area Rapid Transit District and the Los Angeles Metro. *See* TAC at ¶¶ 33-42. ATS also alleges that Champion is still purchasing the Thermalguard resins and

3

1 of action for injunctive relief to enjoin Champion from further purchasing or using Thermalguard
2 resins and manufacturing and selling the Flame Shield product. Finally, ATS brings a cause of
3 action for violation of the California Uniform Trade Secrets Act ("CUTSA," California Civil Code
4 § 3426(b)(1) et seq.) for misappropriation by acquisition. TAC at ¶¶ 65-66.[4]

## II. DISCUSSION

Champion seeks to depose ATS's attorney Marc Shea to inquire about three topics: (1) the settlement negotiations in the *Ghiorso* case; (2) the "testimony and documents ATS received from Champion's president, Goran Haag, during his deposition in the *Ghiorso* case, regarding Champion's purchase of resin from Thermalguard Technology, its assistance in funding the *Ghiorso* defense, and payments made to Mr. Ghiorso"; and (3) ATS's reasons for not joining Champion as a party in the *Ghiorso* case. Letter at 5.

At the hearing, Champion's counsel represented that it had deposed Jeff Shea, a non-attorney who is the CEO of ATS, and thereby acquired information regarding the second and third topics. Champion's counsel averred that it no longer seeks to depose Marc Shea on these topics, so long as ATS does not intend to offer Marc Shea as a witness on these topics. ATS's counsel represented on the record that ATS would not offer Marc Shea as a witness regarding those two subjects. Accordingly, the only subject on which Champion seeks to depose Marc Shea is the settlement negotiations in the *Ghiorso* case.

As a preliminary matter, the court notes that neither party discusses the propriety of putting the contents of settlement discussions at issue in this case. Champion and ATS do not confront the foundational question of whether conduct or communications relating to settlement proceedings can be revealed, and if so, under what circumstances. As the parties did not raise the issue, the court will not address it.

---

continues to build the Flame Shield product with Thermalguard resins. *Id.* at ¶ 32.

[4] The other causes of action in the TAC were dismissed on January 15, 2015. Docket No. 93 at 2 (holding that the misappropriation of trade secrets, receipt of stolen property, and aiding and abetting claims were preempted by CUTSA).

4

### A. Legal Standards for Depositions of Opposing Counsel

#### 1. The *Shelton* Rule

The court begins by reviewing the federal rule and the case law regarding depositions of attorneys. The Federal Rules of Civil Procedure provide that "[a] party may . . . depose any person." Fed. R. Civ. P. 30(a)(1). "Therefore, there is no express prohibition against the taking of attorney depositions," including depositions of the attorneys representing the opposing parties in the case. *Massachusetts Mutual Life Ins. Co. v. Cerf*, 177 F.R.D. 472, 478 (N.D. Cal. 1998). *See also Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) ("[T]he Federal Rules of Civil Procedure do not specifically prohibit the taking of opposing counsel's deposition."); *Johnston Development Group, Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 352 (D.N.J. 1990) ("Neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence prohibit taking the deposition of an opposing party's attorney.").

Even so, courts generally recognize that a deposition of opposing counsel is a unique and sometimes undesirable circumstance. The seminal case[5] on this issue is *Shelton*, in which the Eighth Circuit noted that "the increasing practice of taking opposing counsel's deposition [is] a negative development in the area of litigation, and one that should be employed only in limited circumstances." *Id.*, 805 F.2d at 1327 (citing *Hickman v. Taylor,* 329 U.S. 495, 513 (1947) ("[T]he practice of forcing trial counsel to testify as a witness . . . has long been discouraged")). *See also Nocal, Inc. v. Sabercat Ventures*, *Inc.*, No. C 04-0240 PJH(JL), 2004 WL 3174427, at *2 (N.D. Cal. Nov. 15, 2004) ("The Supreme Court of the United States alluded to a presumption that

---

[5] Courts in this district and across the country recognize *Shelton* as the leading case on opposing counsel depositions. *See*, *e.g.*, *Mass. Mutual*, 177 F.R.D. at 479 (*Shelton* "is generally regarded as the leading case on attorney depositions"); *Chao v. Aurora Loan Servs., LLC*, No. C 10-3118 SBA (LB), 2012 WL 5988617, at *3 (N.D. Cal. Nov. 26, 2012) (noting that *Shelton* is "the leading case on attorney depositions" and collecting cases). The Ninth Circuit has not issued a published decision addressing the circumstances under which a party may take the deposition of an opposing party's attorney. However, in an unpublished decision, the Ninth Circuit followed the three-factor *Shelton* test to determine whether a party was allowed to depose its opposing counsel about facts allegedly relevant to the pending case. *See Willer v. Las Vegas Valley Water Dist.*, 176 F.3d 486 (9th Cir. 1999) (citing *Massachusetts Mutual Life Ins. Co.*, 177 F.R.D. 472, 479 (N.D. Cal. 1998) (citing *Shelton* , 805 F.3d at 1327)).

trial counsel should not be forced to testify because doing so compromises the standards of the legal profession.") (citing *Hickman*, 329 U.S. at 513).

At issue in *Shelton* was the plaintiffs' deposition of the defendant's in-house counsel on questions concerning the existence or nonexistence of documents that the plaintiffs believed the defendant possessed but had not produced during discovery. *Id.* at 1325-26. The defendant's attorney appeared for her deposition, which was held under the supervision of a magistrate judge, but refused to answer questions about her knowledge of the existence of the documents despite the magistrate judge's order. *Id.* at 1325. The district court held that the attorney's refusal to comply with the magistrate judge's orders warranted default judgment against the defendant. *Id.* The Eighth Circuit reversed, finding that the case did not meet the "limited circumstances" in which deposition of an opposing counsel was appropriate because the plaintiffs could obtain the same information about the existence of the documents by deposing the defendant's officials, and because where "opposing counsel has engaged in a selective process of compiling documents from among voluminous files in preparation for litigation, the mere acknowledgment of the existence of those documents would reveal counsel's mental impressions, which are protected as work product." *Id.* at 1326-28.

The *Shelton* court noted that deposing opposing counsel disrupts the adversarial system, adds to the burdens and costs of litigation, and could chill candid communications between that counsel and his or her client. *Shelton*, 805 F.2d at 1327. On the other hand, the *Shelton* court also "recognize[d] that circumstances may arise in which the court should order the taking of opposing counsel's deposition." *Id. See also Am. Cas. Co. of Reading, Pennsylvania v. Krieger*, 160 F.R.D. 582, 588 (S.D. Cal. 1995) (deposition of opposing counsel may be appropriate where "the attorney is a fact witness, such as an 'actor or viewer'"); *Johnston Development Group, Inc.*, 130 F.R.D. at 352 ("The deposition of the attorney may be 'both necessary and appropriate' where the attorney may be a fact witness, such as an 'actor or viewer,' rather than one who was not a party to any of the underlying transactions giving rise to the action, or whose role in a transaction was speculative and not central to the dispute.") (internal citations and quotation marks omitted).

Balancing the various concerns, *Shelton* concluded that "opposing trial counsel is [not]

6

1 absolutely immune from being deposed." *Id.*, 805 F.2d at 1327. Instead, the court should permit
2 the taking of opposing counsel's deposition only when the party seeking to take the deposition has
3 demonstrated three factors: (1) no other means exist to obtain the information than to depose
4 opposing counsel; (2) the information sought is relevant and non-privileged; (3) the information is
5 crucial to the preparation of the case. *Id*. (citations omitted). This three-factor test has been
6 employed by many courts, including courts within this district, to determine the appropriateness of
7 one party's deposition of the opposing party's counsel.

### 2. The *Pamida* Rule

Champion argues that *Shelton* does not apply to the instant case, and instead urges the court to adopt the ruling in *Pamida, Inc. v. E.S. Originals, Inc*., 281 F.3d 726, 728 (8th Cir. 2002), in which the Eighth Circuit revisited *Shelton* and held that the *Shelton* rule should not apply where a party seeks to depose opposing counsel about a prior closed case, rather than the pending case.

In *Pamida*, the Pamida department store had been sued by a patentholder who alleged that Pamida sold shoes that infringed her patent for a shoe tying system. Pamida's attorneys rejected the patentholder's early settlement overtures and instead chose to engage in costly, protracted litigation that ultimately resulted in a settlement. Prior to the settlement, Pamida sued Dynasty, the manufacturer of the offending shoes, seeking indemnification. Pamida was represented in the indemnification suit by the same attorneys that represented it in the patent infringement suit. Dynasty then sought to depose those attorneys on issues which the court described as being "central to the instant litigation," including "what actions Pamida took to give Dynasty notice of the patent infringement action and . . . [Pamida's] claim for indemnity from Dynasty[,] as well as whether the $750,000 in attorneys' fees sought by Pamida were reasonably incurred." *Id.* at 728-29.

The Eighth Circuit reviewed its holding in *Shelton*, and noted that "the *Shelton* test was intend[ed] to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy." *Id.* at 729-30 (citing *Shelton,* 805 F.2d at 1329). The *Pamida* court then distinguished *Shelton*, stating that it "was not intended to provide heightened protection to attorneys who represented a client in a completed

7

1   case and then also happened to represent that same client in a pending case where the information
2   known only by the attorneys regarding the prior concluded case was crucial." *Id*. at 731.  Thus,
3   the *Pamida* court determined that "[t]he concerns raised in *Shelton* regarding abuse of the
4   discovery process . . . are not implicated in this case where [the defendants] seek relevant
5   information uniquely known by [the plaintiff's] attorneys about prior terminated litigation, the
6   substance of which is central to the pending case." *Id*.  The court stated that the issues of whether
7   the amount of the attorneys' fees incurred was reasonable and if the plaintiff was given adequate
8   notice of the indemnity claim were both "peculiarly within counsel's knowledge and centrally
9   relevant to the issues in the indemnification action." *Id*.  The Eighth Circuit therefore held that the
10  defendants did not have to satisfy the *Shelton* rule in order to depose opposing counsel about the
11  concluded patent infringement suit.  *Id*. at 730-31.  Instead, the proposed depositions of Pamida's
12  attorneys should be evaluated under the ordinary discovery standards of the Federal Rules of Civil
13  Procedure and any asserted privileges.  *Id.* at 731.

14  The court then concluded that Pamida had waived any claims of attorney-client privilege
15  or work product protection by "institut[ing] an indemnification action . . . [and] putting the work
16  of its attorneys squarely at issue," and upheld the district court's ruling permitting the depositions
17  of Pamida's attorneys.  *Id.* at 732.

18  The Ninth Circuit has not issued a published decision governing depositions of opposing
19  counsel either in the context of soliciting testimony about a pending case or about a concluded
20  case.  Courts in this district have followed the demanding three-factor test laid out in *Shelton*, but
21  most of those courts have encountered the issue when a party seeks to depose opposing counsel
22  about the pending case, and thus did not have to consider a scenario like the one presented in
23  *Pamida*.  *See, e.g., Chao*, 2012 WL 5988617 at *1 (defendant sought to depose plaintiff's
24  counsel); *Villaflor v. Equifax Info.*, No. C-09-00329 MMC, 2010 WL 2891627, at *1 (N.D. Cal.
25  July 22, 2010) (same); *M.A. Mobile Ltd. v. Indian Inst. of Tech. Kharagpur*, No. C-08-02658-
26  RMW, 2014 WL 819161, at *1 (N.D. Cal. Feb. 28, 2014) (plaintiffs' sought to depose defendants'
27  counsel); *AWGI, LLC v. Duncan & Elbaz, Inc.*, No. C10-01529 HRL, 2010 WL 4595158, at *1
28

(N.D. Cal. Nov. 3, 2010) (same).[6]

Champion points to two out-of-district cases in which courts applied *Pamida* instead of *Shelton* to determine whether to permit the deposition of opposing counsel about topics not related to the pending case. One of these cases, *Devlyne v. Lassen Mun. Util. Dist.*, No. CIV. S-10-0286 MCE, 2011 WL 4905672, at *2 (E.D. Cal. Oct. 14, 2011), is factually distinguishable from the circumstances here. In *Devlyne*, the plaintiff employees sought to depose Jamie Jones, the former in-house counsel of the defendant employer. Ms. Jones had percipient knowledge of the factual circumstances leading to the employees' lawsuit, because she had participated in an employee meeting and had communicated with an investigator about events that gave rise to the lawsuit. The court permitted the deposition, reasoning that "the *Shelton* criteria apply only when trial and/or litigation counsel are being deposed and the questioning would expose litigation strategy in the pending case." *Id.* at *2 (citing *Pamida*, 281 F.3d at 730). But in *Devlyne*, unlike the instant litigation, the former in-house counsel was not the employer's present trial counsel. In fact, the *Devlyne* court specifically declined to apply the *Shelton* factors because the employer had "established no factual foundation to demonstrate that Jones is or was trial/litigation counsel for [the employer]. Likewise, no foundation exists that Jones was so intimately involved with the litigation that taking her deposition would be akin to deposing one's litigation counsel." *Id.*

The other case cited by Champion is *aaiPharma, Inc. v. Kremers Urban Development Co.*, 361 F.Supp.2d 770 (E.D. Ill. 2005). There, the plaintiff sued defendants for patent infringement. The defendants sought to depose the plaintiff's present counsel, who had also been involved in the prosecution of the underlying patents, in order to develop its theory that the patents were unenforceable due to the plaintiff's inequitable conduct during patent prosecution. *Id.* at 772. The *aaiPharma* court, citing *Pamida*, characterized *Shelton* as being limited to "depositions of trial

---

[6] In its own research, the court could locate only one case within this district considering the issue of a deposition of counsel who represented the opposing party in the present case and had also represented that party in a different, concluded matter. That court followed the *Shelton* standard, without discussing *Pamida*. See *State Nat'l Ins. Co. v. Khatri*, No. C 13-00433 LB, 2014 WL 1877618 (N.D. Cal. May 9, 2014).

counsel regarding their knowledge of the particular case in which they served as trial counsel." *Id.* at 775. Since the deposition of the plaintiff's attorneys would probe the attorneys' conduct during patent prosecution, rather than during the present case, the court concluded that the heightened *Shelton* standard did not apply, and instead the propriety of the discovery request would be determined under the general standards of the Federal Rules of Civil Procedure. *Id.* The court then considered the plaintiff's relevance, burden, and privilege objections, and granted the defendants permission to take opposing counsel's depositions on a limited number of topics. *Id.* at 777-78.

### B.     Analysis

The court must first determine which standard to apply in deciding whether Champion should be permitted to depose Marc Shea: (1) the heightened three-factor standard articulated in *Shelton* and apparently unanimously followed by the courts in this district; or (2) the regular discovery standards of Federal Rule of Civil Procedure 26, as determined by the *Pamida* court.

The court applies *Pamida* to the situation presented in this dispute. The *Shelton* court applied a heightened test for depositions of opposing counsel on matters relating to the pending case because those depositions disrupt the adversarial system, lower professional standards, burden the legal system with collateral disputes about attorney client and work product objections, and could chill communications between the client and the attorney. 805 F.2d at 1327. These concerns, although still present, are less pronounced when, as here, the subject matter of the deposition of opposing counsel is not his conduct in the pending case but his percipient knowledge of the events surrounding a prior concluded litigation. To permit a fact witness to evade a deposition simply because he acted as an attorney in a prior case would invite parties to retain the same counsel in subsequent cases to avoid revealing information that would otherwise be discoverable. Champion seeks to depose Marc Shea about the settlement negotiations in the *Ghiorso* case, during which ATS was represented by Marc Shea. Because Champion seeks the deponent's percipient knowledge of events that occurred during a prior concluded case, *Pamida* applies, which requires the court simply to analyze the question under the ordinary discovery standards set forth in the Federal Rules of Civil Procedure.

At the hearing, ATS's counsel admitted that Marc Shea has percipient knowledge of the settlement negotiations in *Ghiorso* and that this information is relevant to the claims asserted by ATS in this case. The thrust of ATS's allegations is that even though Champion was not a party in *Ghiorso,* it was nevertheless fully involved in that litigation, as illustrated by the fact that Champion was able to participate in, and eventually scuttle the settlement.  TAC at ¶¶ 13, 15. Champion also notes that Marc Shea handled the negotiations on ATS's behalf and communicated with defense counsel and counsel for Champion, neither of which Plaintiff disputes.

However, simply because the discovery sought is relevant does not mean that the court must permit it. A court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). To the extent that Champion seeks information about the extent of Champion's involvement in *Ghiorso*, it can first attempt to obtain that information from other sources more convenient and less burdensome than through the disfavored practice of deposing opposing counsel. For example, Champion itself would presumably know what happened in the settlement proceedings, since it appears undisputed that Champion participated in them. A number of witnesses experienced the settlement negotiations in *Ghiorso* firsthand, including Frank Ghiorso and the original and substitute counsel for the *Ghiorso* defendants.[7] Indeed, at the hearing, ATS's counsel noted that ATS was not planning to offer Marc Shea as a fact witness on this topic, and instead planned to depose Frank Ghiorso and his original counsel John Piccone. Champion could do the same.

However, ATS did not unequivocally represent that it will not call Marc Shea as a witness. Instead, ATS asserted that it would call upon Marc Shea if it is unable to establish key facts through other discovery. Under such circumstances, the burdens created by allowing Champion to

---

[7] As noted above, the *Ghiorso* defendants were, at the end of the case, represented by the same attorneys from the law firm of Trump, Alioto, Trump & Prescott LLP who represent Champion in this case. It is unclear whether those attorneys were involved in the settlement negotiations in *Ghiorso*, or whether they joined the case after all settlement talks concluded. If the former is true, then Champion's current attorneys also have percipient knowledge of the *Ghiorso* settlement negotiations.

11

depose its opposing counsel would clearly be outweighed by the need for the requested discovery.

### III.   CONCLUSION

For the foregoing reasons, the court finds that Defendant is not entitled to depose ATS's attorney Marc Shea about the *Ghiorso* case at this time. However, if ATS decides to offer Marc Shea as a witness on this topic, it must promptly notify Champion of its decision and immediately make him available for deposition on the topic.

**IT IS SO ORDERED.**

Dated: June 8, 2015

_____
DONNA M. RYU
United States Magistrate Judge